## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**WILLIAM MARTIN BURBANK,
individually and on behalf of all
others similarly situated,**

      **Plaintiff,**

      **v.**

**BMW OF NORTH AMERICA, LLC,**

      **Defendant.**

Civ. No. 21-01711 (KM) (ESK)

**OPINION**

---

**KEVIN MCNULTY, U.S.D.J.:**

The named plaintiff in this putative class action, William Martin Burbank, purchased one of several models of plug-in hybrid BMW vehicles in California that were recalled in late 2020 based on a safety issue with the cars' batteries. Plaintiff brings five California state law claims for fraud and breach of express and implied warranties. Now, BMW moves to dismiss all claims on a variety of grounds, arguing that the plaintiff lacks standing, that his complaint fails to state a claim, and that his claims under the Song-Beverly Act are preempted.

For the following reasons, BMW's motion to dismiss (DE 66) is **GRANTED** in part and **DENIED** in part. Specifically, it is granted with respect to Count 5 and otherwise denied.[1]

---

[1] "Plaintiff," as used herein, refers to Mr. Burbank, unless otherwise specified; no class has been certified as yet. Certain citations to the record are abbreviated as follows:

    DE = docket entry in this case

    Compl. = Complaint (DE 1)

    Mot. = BMW's Brief in Support of its Motion to Dismiss (DE 66-1)

    Opp. = Plaintiffs' Opposition to BMW's Motion to Dismiss (DE 72)

    Reply = BMW's reply in support of its Motion to Dismiss (DE 75)

## I.   BACKGROUND

This case is about an allegedly defective battery used in several hybrid BMW models. (Compl. ¶ 7.) Plaintiff purchased a BMW X3 plug-in hybrid electric vehicle ("PHEV")[2] on September 14, 2020. (*Id.* ¶ 9.) The vehicle came with an express warranty, and certain implied warranties arise under state law. (*Id.* ¶ 10–11.) On September 30, 2020, BMW issued a recall of the model Burbank purchased, as well as several other models (the "class vehicles").[3] (*Id.* ¶ 28.) The recall warned owners that the battery defect created a risk of a short circuit and thus a "thermal event," *i.e.*, potentially a fire. (*Id.* ¶ 15, 29.) At the time of the recall there was no available fix for the battery, so BMW instructed owners of the class vehicles to drain the battery, to refrain from recharging it, and to operate the car in gasoline-engine mode alone. This directive involved refraining from using the shift paddles or "sport mode," which BMW claimed would eliminate the risk of a battery malfunction. (*Id.* ¶ 19, 30.) In short, for a period of time, owners of class vehicles were told to not use the electric functions of their PHEVs because of the battery defect. Burbank brought his vehicle to the dealership to have the issue fixed. When he was told it was not currently possible to repair the problem, he left his car at the dealership for several months. (*Id.* ¶ 13.) On December 3, 2020, he filed this lawsuit in the U.S. District Court for the Central District of California. After this case was filed, BMW was able to fix the cars by replacing their batteries. Burbank's car was fixed in January 2021, and he received a $1,000 compensatory payment from BMW. (Mot. at 1.)

---

[2]   A plug-in hybrid can run on both electricity and gasoline. If it functions properly and the owner plugs it in regularly, most short trips can be completed without using gasoline at all. BMW represents that the electric range of Burbank's car was 20 miles. (Mot. at 1.) The battery can also be charged by braking, and, apparently, by using "sport mode" and the shift paddles. (Compl. ¶ 30.)

[3]   These class vehicles are the 2020-2021 530e, 530e xDrive, 530e iPerformance and X3 xDrive30e and MINI Cooper Countryman All4 SE, 2020 BMW i8, and 2021 330e, 330e xDrive, 745Le xDrive, and X5 xDrive45e.

Burbank's complaint states that he seeks to represent a class of all those who purchased or leased the class vehicles in California. (Compl. ¶ 33.) Invoking diversity jurisdiction, the complaint asserts five state-law Counts. First, Burbank demands several forms of injunctive relief under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (*Id.* ¶ 45–68.) Second, he brings a claim for breach of express warranty under the Song-Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code § 1790, *et seq.*, seeking damages. (*Id.* ¶ 69–84.) Third, he brings a claim for breach of implied warranty under the SBA, also seeking damages. (*Id.* ¶ 85–96.) Fourth, he brings a fraud claim under the CLRA and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.* (*Id.* ¶ 97–111.) Fifth, he claims that BMW breached the covenant of good faith and fair dealing implied in his warranty contract. (*Id.* ¶ 112–17.)

On December 15, 2021, Burbank applied for a temporary restraining order to force BMW to stop advertising the class vehicles. (DE 10.) That application was denied. (DE 15.) On January 29, 2021, Burbank stipulated to a transfer of the case to this court, which was granted. (DE 27, 28.) On March 26, 2021, BMW moved to consolidate this case with a related case.[4] (DE 50.) On July 20, 2021, Magistrate Judge Edward S. Kiel consolidated the cases, though only, at least at present, for purposes of discovery and case management. (DE 63.)

On August 30, 2021, BMW filed this motion to dismiss Burbank's complaint in its entirety. (DE 66.) Burbank filed a brief in opposition (DE 72) and BMW filed a reply (DE 75). This motion is fully briefed and ripe for decision.

## II.   STANDARDS OF REVIEW

### A. Standing

Under Rule 12(b)(1), a defendant may move to dismiss on grounds that the court lacks subject matter jurisdiction over the dispute. Fed. R. Civ. P.

---

[4]   That case is *Kavon v. BMW NA*, Civ. No. 20-15475 (D.N.J.).

12(b)(1). A Rule 12(b)(1) motion is the proper vehicle for a motion to dismiss for lack of standing. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A Rule 12(b)(1) attack can be facial where the defendant "attacks the complaint on its face without contesting its alleged facts." *See Hartig Drug Co. v. Senju Pharms. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). In such a case, the court considers only the allegations of the complaint and documents properly referred to therein, construed in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

### III. DISCUSSION

### A. Standing

To properly allege standing, a plaintiff must allege that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

BMW's challenge to standing is a partial one.  That is, BMW does not argue that Burbank lacks standing to assert a claim based on his own X3

automobile, or that he would lack standing to bring claims on behalf of other X3 purchasers. Rather, BMW argues that Burbank lacks standing to bring claims on behalf of those who purchased different BMW PHEV model vehicles. (Mot. at 9–11.) BMW cites cases from this district for the proposition that "plaintiff has standing only for claims related to products he purchased or used." (Mot. at 10 (citing *David v. Volkswagen Grp. of Am., Inc.*, No. CV 17-11301-SDW-CLW, 2018 WL 1960447, at *3 (D.N.J. Apr. 26, 2018)).) In *David,* for example, the named plaintiff purchased a 2014 Volkswagen Touareg with an allegedly defective sunroof. The court held that David did not have standing to pursue claims on behalf of those who purchased vehicles of different models or years. *David,* 2018 WL 1960447, at *3.

Burbank points out, however, that other courts in this district have taken a more lenient approach. (Opp. at 11–14.) Those cases analyzed a named plaintiff's standing to bring claims on behalf of those who purchased different models based on a three-part test (herein, the "*Haas* test") developed by the Third Circuit in *Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1088–89 (3d Cir. 1975). *See Sauer v. Subaru of Am., Inc.*, No. CV 18-14933, 2020 WL 1527779, at *3 (D.N.J. Mar. 31, 2020) (citing *Haas*); *see also Cox v. Chrysler Grp., LLC*, No. CV 14-7573(MAS)(DEA), 2015 WL 5771400, at *15 (D.N.J. Sept. 30, 2015) (collecting cases within the district). Those cases hold that a "plaintiff may have standing to assert claims on behalf of putative class members regarding products [the plaintiff] did not personally purchase where (1) the basis of the claims is the same, (2) the products are closely related, and (3) the claims are against the same defendants." *Johnson v. Shop-Vac Corp.*, 2020 WL 3496957, at *4 (D.N.J. June 29, 2020) (quoting *Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *5 (D.N.J. July 29, 2019)).

I find that the *Haas* test comports with the broader goals of representative litigation and is sufficient to satisfy the minimum threshold requirement of standing. Any further issues with Burbank's representation of the purchasers of different BMW models are appropriately dealt with at the

class certification stage. I therefore analyze Burbank's standing to bring claims on behalf of those who purchased different models under the three-part *Haas* test.

First, the basis of the claims is the same. All of the class vehicles were subject to a recall by BMW because of a defective battery. Given that the vehicles were all designed and manufactured by BMW, it is plausible that the battery problems across the different models had the same cause. That supposition is bolstered by the simultaneous recall of the various models. This case, at least as currently alleged, is about one type of allegedly defective battery that was used in different models of cars. Second, the products are closely related, as the automobiles are all PHEVs which use such a battery. Third, the only defendant in this case is BMW.

I therefore find that Burbank has standing to bring claims on behalf of purchasers of all of the class vehicles. At class certification, Burbank will have the burden of proving that the case is appropriately brought as a class action (for example, that he is an adequate representative with a typical claim), but at this point it suffices that he possesses standing.

### B. CLRA Mootness

Burbank seeks injunctive relief under the CLRA. Specifically, the complaint demands that BMW cease all sales of class vehicles, issue a "stop sale" order to its California dealers, take down advertisements for the class vehicles, toll the warranty period for the vehicles, and repair the vehicles within 30 days. (Compl. ¶ 66.) BMW argues that this injunctive claim should be dismissed because it is moot. BMW states that it has now fixed the vehicles, and thus there is no longer any reason for the court to order BMW to stop selling or advertising the vehicles. (Mot. at 11–15.)

Mootness has both an Article III and a prudential dimension. *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc); *see also Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) ("In addition to its threshold constitutional dimension, mootness doctrine incorporates prudential considerations as well."). Article III of the Constitution ties a court's judicial

6

authority to the existence of a "case or controversy," so if a case becomes moot, in the Article III sense, the court lacks jurisdiction. *Rendell v. Rumsfeld*, 484 F.3d 236, 240, 241 (3d Cir. 2007) (citing *Int'l Bhd. of Boilermakers*, 815 F.2d at 914). The prudential mootness doctrine, is discretionary; it permits a court to deny declaratory and injunctive relief if the controversy is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Sierra Club v. U.S. Army Corps of Engineers*, 277 F. App'x 170, 172 (3d Cir. 2008) (quoting *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). The central question in a prudential mootness analysis is "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Int'l Bhd. of Boilermakers*, 815 F.2d at 915 (quoting *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 39 (3d Cir. 1985)).

Here, circumstances have undoubtedly changed since the case was filed. BMW developed a fix for the defective battery, and class vehicles, including Burbank's, were repaired at no cost. (Mot. at 13–14.) It is not the case, however, that this Court can provide no "meaningful relief" in equity. (Mot. at 12 (citing *Cheng v. BMW of N. Am., LLC*, No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *2 (C.D. Cal. July 26, 2013)).) California law provides that, in such a case, it may be appropriate to supplement the explicit guarantees of the warranty:

> The warranty period will be extended for the number of whole days that the product has been out of the buyer's hands for warranty repairs. If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed. The warranty period will also be extended if the warranty repairs have not been performed due to delays caused by circumstances beyond the control of the buyer, or if the warranty repairs did not remedy the defect and the buyer notifies the manufacturer or seller of the failure of the repairs within 60 days after they were completed.

Cal. Civ. Code § 1793.1(a)(2). It is thus possible, if plaintiff succeeds on the merits, that this court could order BMW to extend the warranties on the class

vehicles. That Burbank accepted a $1,000 payment from BMW may blunt his contentions, but it does not wholly moot his request that the warranty on his car be extended. I find that extending the warranty on the class vehicles, if found appropriate, would be "meaningful relief," and thus I find that the CLRA count is not so drained of content as to be wholly moot.

### C. UCL and CLRA Claims

Burbank brings a UCL claim against BMW, arguing that BMW misrepresented and concealed material facts relating to the functioning of the battery in his PHEV. (Compl. ¶ 97–111.) If BMW had revealed that using the battery system would risk starting a fire, says Burbank, he and the absent class members would not have purchased their PHEVs. BMW argues that this Count, as well as the CLRA Count, should be dismissed because Burbank does not meet the heightened fraud pleading standards under Federal Rule of Civil Procedure 9(b).

Rule 9(b) requires a plaintiff pleading fraud to "state with particularity the circumstances constituting fraud or mistake." The Third Circuit has interpreted this to mean that a plaintiff must plead "(1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff suffered an ascertainable loss as a result of the misrepresentation." *Alban v. BMW of N. Am., LLC*, No. CIV 09-5398 DRD, 2010 WL 3636253, at *9 (D.N.J. Sept. 8, 2010) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (finding that UCL claims sounded in fraud and thus the 9(b) pleading standard applied); *In re Tobacco II Cases*, 46 Cal. 4th 298, 328, 207 P.3d 20, 40 (2009) (reliance required for UCL claim). In BMW's view, the complaint (i) fails to plead facts tending to show BMW's knowledge of the defect at the time of Burbank's purchase and (ii) fails to allege that Burbank relied on

the misrepresentations or omissions. I take those two aspects of BMW's argument in order.

### i. Knowledge

A plaintiff must properly allege the defendant's knowledge of the defect at the time of the purchase; to put it another way, a defendant does not have a duty to disclose a defect about which it does not know. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). I find that Burbank has plausibly pleaded that BMW had knowledge of the battery defect as of September 14, 2020, the date that he purchased his car.

As evidence of knowledge, Burbank first cites the recall itself. He purchased his vehicle on September 14, 2020, and the recall was issued just over two weeks later, on September 30, 2020. (Compl. ¶ 9, 28.) That temporal proximity, while hardly ironclad, may suggest an inference of knowledge. Further supporting such an inference is another recall, issued on August 14, 2020, a month before Burbank's purchase. That prior recall covered three of the class vehicles, though not specifically the X3 that Burbank purchased.[5] (DE 10-5, Ex. 1.) In the August 14 recall notice, BMW wrote that the high-voltage batteries in the three recalled models "may not have been produced to specifications," but that the batteries in non-recalled models were produced to specifications. (DE 10-5 at 10.) By virtue of the September 30 recall, BMW acknowledged that the batteries contained in the newly recalled models likewise "may not have been produced to specifications." (Compl., Ex. 2 at 4.)

The two recalls, considered together, raise to the level of plausibility the contention that sometime before September 14, 2020, BMW knew that the battery problem existed. Such an inference could only be further reinforced by evidence that the various models contained the same batteries, produced by the same supplier. Particularly in light of BMW's control of the relevant facts, I

---

[5]     The three vehicles recalled in August were the X3 xDrive30e Sports Activity Vehicle ("SAV"), X5 xDrive45e SAV, and 330e Sedan. (DE 10-5 at 3.) The September 24 recall expand to cover all plug-in hybrid X3 models, not just the xDrive30e. (DE 11-8.)

find that Burbank has sufficiently alleged that BMW had, or gained, knowledge of the battery problems in the period preceding his purchase of his car. That is sufficient to unlock the doors of discovery on the issue.

I thus decline to dismiss the UCL or CLRA claims based on the knowledge element.

### ii. Reliance

BMW argues that Burbank fails to state a UCL or CLRA claim because he does not allege, as required, that he relied on BMW's misrepresentations or omissions. (Mot. at 20–22.) Reliance requires that a plaintiff plausibly allege that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *Mirkin v. Wasserman*, 23 Cal. Rptr. 2d 101 (1993)). I find that Burbank has adequately pleaded reliance.

 Now it is true that the complaint lacks the sort of allegations often pled in support of reliance, such as plaintiff's review of a website or promotional materials before purchasing the product in question. *See, e.g.*, *Hall v. Sea World Ent., Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015) (finding no reliance where no plaintiff alleged having seen Sea World promotional materials regarding the treatment of the animals before purchasing a ticket). Here, however, the allegedly defective element of the vehicle – the battery – is at the core of the vehicle's appeal. A consumer pays a premium for a PHEV in the expectation that it will run, much of the time, on electricity rather than gasoline. There is no plausible inference that a consumer would purchase a PHEV vehicle that would not run on electricity, or which, if run on electricity, could overheat or catch fire. After the recall, Burbank's vehicle ceased functionally to be the hybrid vehicle that it was represented to be (until, of course, it was eventually repaired).

It naturally follows that disclosure of the defect would have changed the consumer's behavior. "That one would have behaved differently can be presumed, or at least inferred, when the omission is material." *Daniel*, 806 F.3d

at 1225. Here, it is plausibly alleged that the battery issue was material and that Burbank would not have purchased his car if he had known of the battery defect. (Compl. ¶ 109.)

I thus find that Burbank has plausibly pleaded reliance and decline to dismiss his UCL and CLRA claims on that basis.

### D. SBA

Burbank also brings two Counts under the Song-Beverly Consumer Warranty Act ("SBA") for breaches of express and implied warranties on the class vehicles. The SBA requires that all consumer goods conform to the implied warranty of merchantability, and provides that car manufacturers must repurchase cars that cannot be repaired to conform with their express warranties after a reasonable number of attempts. Cal Civ. Code § 1791 *et seq.* BMW argues that these SBA Counts should be dismissed for a number of reasons, but I decline to do so.

### i. Preemption

First, BMW argues that the SBA is conflict-preempted by the federal Motor Vehicle Safety Act (the "Safety Act"). 49 U.S.C. § 30101, *et seq.*[6] BMW cites no applicable precedent, but rather argues from first principles. Conflict preemption is one of three ways for a federal statute to preempt a state law.[7] A court can find conflict preemption if "it is impossible for a private party to comply with both state and federal law and where under the circumstances of a particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

---

[6] BMW briefly argues that its preemption arguments apply to the UCL and CLRA claims as well, but these arguments fail for the same reasons the SBA preemption argument fails. (Mot. at 27.)

[7] The other two types of preemption, express and field preemption, are not at issue here. Courts have held that the Safety Act does not wholly occupy the field of motor vehicle safety. *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1276 (C.D. Cal. 2016) (quoting *Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398, 400 (8th Cir. 2000)).

Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (cleaned up). There must be "clear evidence" of such a conflict. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000).

BMW identifies what it views as a conflict between the Safety Act and the SBA. The Safety Act requires car manufacturers "to issue a recall notice to alert consumers of a potential defect in their cars *even when parts are not available yet* for the recall"; the SBA, on the other hand, imposes liability "where an automaker is unable to repair a defect in a car presented to the dealer and as a result, the vehicle is out of service for 30 days." (Mot. at 22.) BMW thus argues that if it learns of a defect that it cannot immediately repair, federal law requires it to alert consumers, thus setting the SBA clock ticking and essentially handing them a state law cause of action. BMW calls this a "gotcha" and a "Hobson's choice."[8] It would be impossible, says BMW, to comply with both federal and state law, and adoption of Burbank's theory "would transform BMW NA's compliance with federal law into a violation of state law." (*Id.* at 28.)

BMW's preemption argument fails, however, because it is not impossible for BMW to comply with both the Safety Act and the SBA.

First, it is not "impossible" for a manufacturer to have a fix ready at the time of the recall, or to make customers whole when such a fix is not currently available. Both alternatives are feasible. The Safety Act does not require a recall notice only when a fix is unavailable; rather, it promotes the goal of safety by requiring a recall *whether or not* a fix is ready. The Safety Act is concerned with safety, not with ensuring that consumers receive the benefit of the bargain. *See Buzzard v. Roadrunner Trucking, Inc.*, 966 F.2d 777, 783 (3d Cir. 1992) (holding that the primary goal of the Safety Act was safety, not uniformity of motor vehicle regulations); *see also Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d

---

[8]     Commonly misused, the expression "Hobson's choice" properly refers not to an unappetizing choice, but to an illusory choice—"this or none." In lore, Tobias Hobson was a Cambridge stable owner who hired out horses, but required the customer to "choose" the one nearest the door. https://www.bartleby.com/81/8342.html (citing E. Cobham Brewer 1810–1897. Dictionary of Phrase and Fable. 1898).

953, 963 (N.D. Cal. 2004) (same). It aims to keep dangerous cars off the road irrespective of the potential liability that automakers may incur if they admit to the existence of defects. If BMW had a fix prepared when it learned of the battery defect, then fine, it could repair the class vehicles during the 30-day period permitted by the SBA. Unfortunately, BMW was not immediately able to repair the defect, but it was still required to *reveal* the defect, even if it incurred financial liability as a result. That, too, is compliance. It was not "impossible" for BMW to comply with both statutes.

Second, as BMW acknowledges in its Reply, the "impossibility" argument is undermined by an exception to the SBA's 30-day repair requirement. The SBA provides that "[d]elay caused by conditions beyond the control of the manufacturer or its representatives shall serve to extend this 30-day requirement." (Reply at 6–7 (citing Cal. Civ. Code § 1793.2(b)).) In such a case, "conforming goods shall be tendered as soon as possible following termination of the condition giving rise to the delay." Cal. Civ. Code § 1793.2(b). Thus, BMW has a fact-based defense: it can avoid liability under the SBA by proving that the delay in repairing Burbank's vehicle was due to conditions beyond its control. *See McGee v. Mercedes-Benz USA, LLC*, No. 19CV513-MMA (WVG), 2020 WL 1530921, at *5 (S.D. Cal. Mar. 30, 2020) (finding that plaintiff did not state a claim in part because the failure to repair was beyond the control of the manufacturer). For this reason, too, it was not impossible for BMW to comply with both the SBA and the Safety Act.[9]

Conflict preemption, however, is not limited to cases of literal impossibility (although that is the thrust of BMW's argument). Alternatively, preemption can arise when a state law "stands as an obstacle to the

---

[9]    In addition, plaintiff cites several cases finding that the Safety Act did not preempt various state laws. Although none of the cases are factually on point, they show a uniform hesitancy to find that the Safety Act preempts state law claims. In fact, courts have held that the Safety Act does not preempt even state-issued recalls, which are much closer to the central purpose of the Safety Act than are state-law causes of actions for damages. *See Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1218 (N.D. Cal. 2002); *Lassen*, 211 F. Supp. 3d at 1278.

accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530 U.S. at 372–73. As noted above, the primary purpose and objective of the Safety Act is to increase the safety of motor vehicles. Uniformity of regulation is "at best a secondary goal." *Chamberlan*, 314 F. Supp. 2d at 963. What is more, the Safety Act specifically states that it does not affect warranty obligations under state statutory or common law. 49 U.S.C. § 30103(d)–(e). The Safety Act thus "plainly contemplates that it will operate in conjunction with traditional common law tort remedies." *In re Gen. Motors LLC Ignition Switch Litig.*, 154 F. Supp. 3d 30, 45 (S.D.N.Y. 2015). I thus find that the SBA does not pose an obstacle to the objectives of the Safety Act.

Because it is possible for BMW to comply with both the Safety Act and the SBA, and because the SBA is not an obstacle to the purposes of the Safety Act, I find that the SBA is not preempted here.

### ii. Nonconformity

The closest and most complex issue in this case is whether Burbank has properly pleaded that his vehicle had a "nonconformity" under the meaning of the SBA. I find that the complaint does adequately plead a nonconformity because it alleges facts plausibly suggesting that the battery in Burbank's vehicle was, in fact, defective and that the defect impaired the use, value, and safety of the car. I hold that, to be actionable, a nonconformity need not have manifested itself in the sense of producing a "thermal event," but that it must actually and currently exist.

To state a claim under the SBA, a plaintiff must plausibly allege that "(1) the vehicle *had* a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element)." *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001) (emphasis added).

BMW does not, for purposes of this motion, dispute the second and third elements, but focuses its challenge on the nonconformity element. (Mot. at 29.)

The SBA defines an actionable "nonconformity" as a "nonconformity which substantially impairs the use, value, or safety" of the new vehicle to the buyer. Cal. Civ. Code § 1793.22(e). Perhaps recognizing the circularity of using the word "nonconformity" to define "nonconformity," some courts have substituted the word "defect" when construing the statutory language.[10] *McGee*, 2020 WL 1530921, at *4 ("A 'nonconformity' under the Act is a defect that substantially impairs the use, value, or safety of a vehicle to the buyer."); *see also Schreidel v. Am. Honda Motor Co.*, 34 Cal. App. 4th 1242, 1243 (1995) ("[T]he term 'nonconformity,' as used in the [SBA], has a similar meaning to what the average person would understand to be a 'defect.'") It is undisputed that if the nonconformity in Burbank's BMW had manifested as a "thermal event" or other kind of battery short circuit, that would constitute proof that the battery had a nonconformity. (Mot. at 29.) Here, however, upon receiving the recall notice, which instructed him not to charge the battery or use certain of the car's features, Burbank took his car to a dealership to be repaired. When a repair was not possible, the car sat at the dealership for several months.[11]

BMW argues in its Motion to Dismiss that Burbank's claim must be dismissed because he cannot plausibly allege that his battery was, in fact, defective. (Mot. at 29.) In BMW's view, Burbank is primarily trying to hold BMW liable simply for issuing a general recall, irrespective of whether a particular vehicle actually had a defect. BMW cites several cases for the proposition that a potential defect that does not actually manifest in a plaintiff's vehicle does not satisfy the nonconformity element of the SBA. *McGee*, 2020 WL 1530921, at *4 (finding that plaintiff had not stated an SBA claim for a defective airbag

---

[10]    The statutory passage might perhaps be better viewed, not as defining the word nonconformity, but rather as setting a threshold—*i.e.*, stating how serious the defect must be to be actionable.

[11]    There were, however, post-complaint developments. The dealership detected a defect in the battery and replaced the defective parts. *See* pp. 17–18 & n. 12, *infra.*

because 1) the recall notice was not an admission by the manufacturer of a defect, 2) that the recall notice indicated only that certain vehicles were affected by the defect and that plaintiff's vehicle was potentially affected, 3) that the potential defect never manifested and there was no evidence that the airbag was in fact defective, and 4) the vehicle had no other defects.); *Adams v. FCA US LLC*, No. CV164317JFWMRWX, 2016 WL 9136170, at *5 (C.D. Cal. Dec. 27, 2016) ("[B]ecause Plaintiff experienced *no* defects in her Jeep, only potential defects that were the subject of the recall notices (and repaired before any defect manifested), Plaintiff cannot satisfy the nonconformity element.")

Burbank responds that he did properly plead a nonconformity under the SBA. I discuss his three arguments in order:

First, Burbank argues that BMW admitted that there was a nonconformity in its recall notice. This argument rests, however, on a selective quotation from the recall notice. In Burbank's version, the recall notice states: "BMW has decided that a defect, which relates to motor vehicle safety, exists." (Opp. at 27.) That quotation omits the remainder of the sentence, which reads in full: "BMW AG has decided that a defect, which relates to motor vehicle safety, exists in *certain* … vehicles." (DE 10-8 at 2 (emphasis added).) The next sentence continues: "Our records indicate that you are the owner of a *potentially affected* vehicle." (*Id.*) This statement is not an admission that Burbank's specific vehicle contained a defective battery—only that it was part of a certain class of vehicles, some of which contained a defective battery. A recall will often be overinclusive. A manufacturer might, for example, recall a whole line of automobiles even if a manufacturing defect occurred only at a specific factory. Or a manufacturer might recall all vehicles produced in a certain factory even if only one model contains a manufacturing defect. Either way, the mere existence of a recall does not prove that any individual's vehicle actually contained a nonconformity. This first argument, then, fails because it provides no evidence that Burbank's vehicle was, in fact, defective.

Second, Burbank argues that the SBA creates a presumption of liability in his case. The statute states that "[i]t shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within 18 months from delivery to the buyer or 18,000 miles on the odometer of the vehicle… [t]he vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer." Cal. Civ. Code § 1793.22(b). Burbank's vehicle was out of service for more than thirty days within the statute's timeframe. This occurred partly by choice; Burbank left the car at the dealer rather than drive it, out of caution. He states that it was not possible to drive the car solely on gasoline power, as directed by BMW, because braking charges the battery. (Opp. at 4 n.1). But Burbank's subjective, if reasonable, belief that his car *might* be one of the unlucky ones with a nonconformity also fails to state a claim under the SBA. The above quoted passage requires the vehicle to be "out of service *by reason of repair of nonconformities.*" Cal. Civ. Code § 1793.22(b) (emphasis added). Thus, the presumption of liability applies only when the vehicle, in fact, had a nonconformity in the first place. In this respect, Burbank's reasoning is circular. Which brings us to Burbank's third, updated argument.

Third, Burbank argues that he has now plausibly alleged that his vehicle's battery was, in fact, defective, even if he had not alleged it before. In January 2021, after the filing of the complaint, the dealership inspected and repaired Burbank's car. He submits the work order, which recites that the dealership performed a test on the battery and concluded "results are to replaced [*sic*] all 6 cell modules [of the battery]." The battery cells were replaced at that time. (DE 76, Ex. A, at 3.)[12] Thus the dealership's test revealed that the

---

[12]   These facts were not alleged in the complaint, because they did not yet exist.  In the interest of efficiency, I will treat the plaintiff's proffer of this after-acquired information as a supplementation of the complaint pursuant to Fed. R. Civ. P. 15(d). The defendant may file a short statement admitting or denying those supplemental facts, which I treat, of course, as alleged, not proven.

particular battery in Burbank's car was, in fact, defective. Now, Burbank has not alleged the mere possibility of a nonconformity; he has alleged that his car in fact contained a nonconformity. That allegation hits the mark and allows him to state a claim under the SBA.

The SBA makes actionable "a nonconformity which substantially impairs the use, value, or safety" of the new vehicle to the buyer. Cal. Civ. Code § 1793.22(e).[13] BMW's discussion relies heavily on "manifestation" of the defect; here, a fire or at least overheating of the battery. The statute, however, does not use that word. The statute refers to a nonconformity "which substantially impairs" the vehicle's value, language that suggests only that the nonconformity must actually exist as something more than a potentiality. Case law seems to follow suit, implying that the nonconformity, whether or not immediately apparent, must actually be present in the product. *See Oregel*, 90 Cal. App. 4th at 1101 (stating that a plaintiff is required to prove "the vehicle *had* a nonconformity") (emphasis added). And it must be remembered, of course, that this is a warranty-based cause of action, traditionally remedied by replace-or-repair, again implying an actually existing defect.

I conclude that a plaintiff cannot state a claim against a vehicle manufacturer under the SBA solely because a recall was issued, because there is a possible defect, or because some vehicles of the same model have a defect. To state a claim under the SBA, this plaintiff must allege that *his* vehicle was, *in fact*, defective. And Burbank has done so.[14]

What, then, of "manifestation"? Manifestation of the nonconformity is not a statutory element, but simply one (very good) way of demonstrating that a

---

[13]    As noted at p. 15 & n. 10, *supra,* the primary purpose of this statutory passage seems to be to establish a threshold, *i.e.,* a level of severity beyond which a defect may be actionable.

[14]    The existence of a nonconformity, of course, is but one link in the chain which leads to potential liability. If, for example, a defect can be fixed within thirty days, there is no liability under the SBA. *See Adams v. FCA US LLC*, 2016 WL 9136170, at *5 (vehicle was repaired before any defect manifested). Issues of class certification also pose a potential challenge.

nonconformity exists. *See McGee*, 2020 WL 1530921, at *4 (finding that plaintiff had not stated an SBA claim for a defective airbag, in part because there was no evidence that the airbag was in fact defective). If a car battery were to overheat and cause a fire, that would be good evidence of a nonconformity, but it is not the only possible evidence. There are conditions short of a "thermal event" that may demonstrate that a nonconformity exists. Here, for example, the dealer performed a test on the battery and determined it was defective. (DE 76, Ex. A at 3.) In other cases, the defect may be more readily discernible, if only to a mechanic's trained eye. In short, I reject BMW's argument that a consumer cannot state a claim under the SBA, even where the nonconformity has been shown to exist, because the nonconformity has not yet "manifested" in the form of, *e.g.,* an engine fire. Such a requirement exceeds the language of the statute, which requires only that a nonconformity exist presently.[15]

Having alleged that the nonconformity existed, has Burbank also alleged that the nonconformity "substantially impairs the use, value, or safety" of his vehicle? Yes, he has. The impairment of "value" is fairly obvious: people pay more for electric cars, and a potential buyer, informed of the defective battery, would plausibly be willing to pay less for the vehicle. Burbank has also alleged that the "use" of the vehicle was impaired. As discussed above, the value and

---

[15]    At oral argument, I posed an illustrative (if perhaps unlikely) scenario in which a gasket, designed to be made of rubber, turned out to be made of paper, and that this would inevitably lead to engine failure, but had not yet done so. Counsel for BMW took the position that this would not be a "nonconformity." I disagree. Where a defect in manufacturing actually exists and is discoverable, then a nonconformity should be found, and, if all other requirements are met, a warranty-based remedy should be available.

A rigid "manifestation" requirement is also highly undesirable from a policy point of view. The upshot might be that the owner must wait for the car to catch fire before asserting a claim. By taking prudent steps to reduce risk, the owner could lose the ability to obtain a remedy for the defect under the SBA.

use of a plug-in hybrid electric vehicle to consumers is directly related to its drivability on battery power. Burbank, of course, could have maintained *some* use of his vehicle if he obeyed the recall notice and drove on gasoline power, but the use would nevertheless be impaired. Alternatively, he could have ignored the recall notice, continued to use the PHEV on electric power, and thereby risked a battery short circuit or fire, but in such a case the "safety" of the vehicle would be impaired.

Burbank has successfully alleged that his vehicle had a nonconformity, and that the nonconformity impaired the use, value, or safety of the vehicle. The motion to dismiss the SBA claim on this basis is therefore denied.

### iii. Express Warranty Claim

BMW argues in the alternative that Burbank's express warranty claim under the SBA must be dismissed because the defect he pleads is a design defect, while the warranty covers only defects in materials or workmanship. (Mot. at 32.) I find, however, that the complaint pleads a defect of materials or workmanship of a kind subject to the express warranty.

A design defect exists "when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002). In contrast, a "manufacturing defect exists when an item is *produced* in a substandard condition." *Id.* (emphasis added). This complaint clearly pleads that the battery issues were caused by a manufacturing or materials defect: "The Class Vehicles' battery systems have a serious manufacturing and/or materials defect caused by *debris created in the manufacturing process* leading the battery systems in Class Vehicles to be unreasonably dangerous." (Compl. ¶ 15.) Similarly, the question-and-answer page of BMW's recall notice explains that the batteries in the class vehicles "may not have been produced to specifications." (DE 10-8 at 3.) The negative implication is that, if the batteries had been produced to specifications, the debris would not have remained inside the batteries. That the same manufacturing error affected a large

number of batteries does not convert a manufacturing issue into a design defect. Conversely, there is no indication that BMW designed the batteries so as to contain dangerous debris. Burbank therefore plausibly alleges that the defect was caused by a defect in materials or workmanship, and I will not dismiss his SBA express warranty claim on that basis.

### iv. Implied Warranty

BMW argues that Burbank cannot state a claim for breach of implied warranty under the SBA because his vehicle was fit for its intended purpose, *i.e.*, it was capable of being driven, if only on gasoline power. (Mot. at 30.) California courts, however, have rejected "the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 946 (C.D. Cal. 2012) (quoting *Isip v. Mercedes–Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007)). For example, "[a] vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." (*Id.*) I find, by analogy, that a PHEV which cannot be driven by battery power is not fit for its intended purpose. Again, consumers do not purchase PHEVs only in order to get from point A to point B by whatever means. The intended purpose of the PHEV is to travel by battery power. BMW's recall notice warned owners not to charge the battery and to drive using only the gasoline engine. That requirement rendered the car, at least until repaired, unfit for its intended use.[16]

### E. Implied Covenant

Finally, Burbank adds a claim that BMW violated the covenant of good faith and fair dealing implied in his warranty. (Opp. at 33.) Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and its enforcement." *Carson v. Mercury Ins. Co.*,

---

[16]    Here, BMW also repeats its argument, rejected above, that because Burbank's vehicle did not manifest a defect he cannot state a claim under the SBA. (Mot. at 31.) As also discussed, *supra*, BMW cannot avoid liability by suggesting that owners should have ignored the recall notice.

210 Cal. App. 4th 409, 429 (2012) (internal quotation marks omitted). To properly state a claim that the covenant was breached, a plaintiff must plausibly allege "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 473 (N.D. Cal. 2014).

Here, although Burbank does allege that BMW breached the warranty, he pleads no facts that tend to show that BMW "unfairly interfered with [his] rights to receive the benefits of the contract." Instead, he merely states "labels and conclusions" that the covenant was breached, allegations which do not seem to be distinguishable from his claims of actual breach. The implied-covenant claim is not plausibly alleged and must be dismissed. *Twombly*, 550 U.S. at 555.

## IV.   CONCLUSION

To sum up: First, I find that Burbank has standing. Second, I find that Burbank's claim for injunctive relief under the CLRA is not constitutionally or prudentially moot. Third, I find that Burbank has properly alleged knowledge and reliance under the CLRA and UCL, and therefore the associated counts will not be dismissed. Fourth, I find that the SBA is not preempted by the Safety Act, that Burbank has properly pleaded a nonconformity and manufacturing defect, and that he thus has stated a claim for breach of express and implied warranty under the SBA. Finally, I find that Burbank has failed to state a claim for the breach of the implied covenant of good faith and fair dealing and that therefore that claim must be dismissed.

Thus, for the reasons set forth above, BMW's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the motion is granted with regard to Count 5 and otherwise denied.

A separate order will issue.

Dated: March 21, 2022

/s/ Kevin McNulty
_____

**Hon. Kevin McNulty**
**United States District Judge**